IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

Wisconsin Inmate,
      Plaintiff,

v.                                         Case No. 20-cv-704-jdp

John Doe (Corr. Officer), Kevin Carr,
Randall Hepp, Mark Schomisch,
Capt. Schueler, Bruce Siedschlag,
      Defendants.

## 42 U.S.C. 1983 CIVIL RIGHTS COMPLAINT

This is a 42 U.S.C. § 1983 Civil Rights action seeking Justice, declaratory and injunctive relief as well as damages against the above captioned defendant for violation of plaintiff's 8th and 14th Amendment rights to the U.S. Constitution, and Wis. Stats 893.53, 893.54, 893.57, 893.82, State Tort law.

I.     **PLACE OF CONFINEMENT:** Oakhill Correctional Inst., Box 938, Oregon, WI 53575.

        A.     Is there a grievance procedure in your prison? **YES.**

        B.     Have you filed a grievance concerning the facts relating to this complaint? **YES.**

        C.     If you used the grievance process:

        1.     Describe what you did and the results, if any: Filed a grievance and exhausted the appeal process, with no results. Denied at all levels.

        2.     Is the grievance process complete? **YES.**

        D.     If you did not use the grievance process, explain why not? **N/A.**

II.     **PREVIOUS LAWSUIT:**

        A.     Have you begun other lawsuits in state or federal court relating to the same facts or defendants involved in this action? **NO.**

B. Have you begun other lawsuits in state or federal court relating to your imprisonment? **NO.**

III. **JURISDICTION:**

A. The court has jurisdiction over the plaintiff claims of violation of Federal Constitutional rights under 28 U.S.C. §1331 and 1343.

B. The Court has supplemental jurisdiction over the plaintiffs state law tort claims under 28 U.S.C. § 1367.

IV. **PARTIES:**

A. Plaintiff, Wisconsin inmate, (Patrick, S Tate #291459) currently resides at the Oakhill Correctional Inst., Box 938, Oregon, WI 53575.

B. Defendant (JOHN DOE)(white male), is employed as a correctional officer at Fox Lake Correctional Institution (FLCI), at W10237 Lake Emily Rd., Box 147, Fox Lake, WI 53933, who is only identified primarily by his unique DNA profile (e.g. D8S1178 (12,16); D21S11 (22,28); D8S720 (8,12); CSF1PO (10, 12); D3S1357 (14, 15); THO1 (7,9); D13S317 (11, 13); D16S539 (10,11); vWA (18, 21); TPOX (9,9); D18S51 (13,18); AMEL (X,Y); FGA (21,23), that consist of a string of codes that exclusively identifies John Doe's hereditary composition with near infallibility, that was obtained and prepared by the State Crime Lab analysis for the CODIS database, and currently held by the State Crime Laboratory-Madison, John Doe is being sued in his individual and official capacity.

C. Defendant, Kevin Carr, is employed as the Secretary of the Dept. of Corrections, at 3099 E. Washington Ave., Madison WI 53704, and is being sued in his official capacity for injunctive relief.

D. Defendant Randall Hepp, is employed as he warden at Fox Lake Correctional Institution at W10237 Lake Emily Rd., Box 147, Fox Lake, WI 53933, and is being sued in his individual and official capacity.

E. Defendant Mark Schomisch, is employed as the Security Director at Fox Lake Correctional Institution at W10237 Lake Emily Rd., Box 147, Fox Lake, WI 53933, and is being sued in his individual and official capacity.

F. Defendant Capt. Schueler, is employed as a Captain at Fox Lake Correctional Institution at W10237 Lake Emily Rd., Box 147, Fox Lake, WI 53933, and is being sued in his individual and official capacity.

  G. Defendant Bruce Siedschlag, is employed as the PREA Investigator at Fox Lake Correctional Institution at W10237 Lake Emily Rd., Box 147, Fox Lake, WI 53933, and is being sued in his individual and official capacity.

## V.   INTRODUCTION:

This is a 42 U.S.C. §1983 Civil Rights action seeking Justice, declaratory and injunctive relief as well as damages against the above captioned defendants for violations of plaintiff's 8th and 14th Amendment Rights to the U.S. Constitution, and Wis. Stats 893.53, 893.54, 893.57, 893.82, State Tort law.

I, plaintiff, as a victim, struggled with whether to file this action and had elected to just let it go, suffering in silence, because of the situation that happen. The anger, embarrassment, humiliation and mental torture I was subjected to and faced, knowing that I could not do anything because if i did, I risk further imprisonment if I took matters into my own hands. But remembering what my Granddad told me when I was young that: "No matter what happens in life, always stand up and be accounted for, never be a coward always fight and never give up, and never fear any man or anything" These words of my late grandad is what drives and pushes me forward in pursuit of justice and to bring to light what I was subjected to in the prison, and hopefully bring those persons involved to face justice.

Plaintiff alleges that the Wisconsin Department of Corrections (WDOC) prisons are overcrowded and understaffed subjecting plaintiff, as well as other similarly situated inmates to a substantial risk of serious harm of physical and sexual assaults in violation of their 8th and 14th Amendment Rights.

Although the Department of Corrections run and/or operate their prison system how they so choose, it is only when the overcrowding and understaffing of the prisons have a serious, substantial and detrimental impact and effect on a inmates rights to be protected from staff and inmate sexual and physical assaults, and abuse, is when the 8th Amendment right to be free from Cruel and Unusual Punishment arises.

Plaintiff asserts that he is a victim of assaults by staff and inmates at the Fox Lake Corr. Inst., in which, DNA was recovered, and Plaintiff was provided with information which showed that a DNA hit from CODIS was made. Police interviewed a subject and requested a DNA sample for confirmation, however this was not a match, but it was determined that the individual involved in the assault maybe a relative as the DNA report states identical siblings will share the same DNA. **(Exhibit-A)(attached).**

Plaintiff asserts the defendant (John Doe) is a correctional officer employed within the FLCI who is identified primarily by his unique DNA profile (e.g. D8S1178 (12,16); D21S11 (22,28); D8S720 (8,12); CSF1PO (10, 12); D3S1357 (14, 15); THO1 (7,9); D13S317 (11, 13); D16S539 (10,11); vWA (18, 21); TPOX (9,9); D18S51 (13,18);

AMEL (X,Y); FGA (21,23), that was obtained and prepared by the state crime lab analysis for the CODIS database, and currently held within the state DNA databank until a match is detected for the crime committed. (**Ex-A**).

Defendant (John Doe's) DNA profile consist of a string of codes that exclusively identifies John Doe's hereditary composition with near infallibility and is the most exclusive means of personal identification possible, when the name is unknown, because a genetic code describes a person with far greater precision than a physical description or name.

Plaintiff alleges that a system wide condition of overcrowding and understaffing of the prisons is currently ongoing, in which plaintiff as well as other inmates have suffered injury and continue to suffer serious deprivations of basic human needs such as: 1) Protection from Staff and Inmate Physical and Sexual Assaults, which poses a substantial risk of serious harm to their health and safety now and in the future.

Plaintiff alleges that the defendants knew of the long standing and obvious conditions of overcrowding and understaffing of the prisons, and the deprivation of basic human needs, from newspaper and magazine articles, inmate grievances, prior lawsuits, letters, and incident reports, which talked about and alerted defendants to these violations and unsafe conditions within the (WDOC). However, although the defendants knew of the serious conditions and the substantial risk they pose, the defendant's failure to take reasonable measures in response to those known risk, has caused the plaintiff, as well as other inmates serious physical, emotional, and psychological pain and suffering, humiliation and fright and injuries from being subjected to and a victim of these conditions.

Plaintiff alleges that even when the defendants were aware of the substantial risk of serious harms to the plaintiff and the inmate population, when the harms did in fact occur resulting in injury, the defendants ignored, condoned, and turned a blind-eye, failed to investigate, or failed to adequately investigate the inmate claims, allowing the staff and/or inmate perpetrator to go unpunished and the inmate-victim to suffer in pain, humiliation, and fright, physically, emotionally and psychologically.

Plaintiff alleges that the defendants tolerated, permitted, condoned and/or turned a blind eye to patterns of physical and sexual assaults by staff and inmates, fraternization of staff and inmates engaging in illegal activities within the (WDOC), as well as (Fox Lake Corr.) and has failed to properly investigate such incidents or staff and inmates involved. But instead, conspired to cover-up such incidents of physical and sexual assaults, fraternization, and illegal activities by staff and inmates, by not securing evidence, not adequately investigating, by prolonging investigations to allow retirement, transfer, or release of staff, inmates or witnesses involved, with the foreseeable result being that staff and inmates believed that their unlawful actions would be tolerated and not investigated and thus, were encouraged to believe that they could continue to violate the law, and plaintiff and other inmate rights with impunity.

VI. **STATEMENT OF CLAIM**

1. Plaintiff asserts that due to Wisconsin statewide condition of overcrowding and understaffing, plaintiff as well as other similarly situated inmates have suffered serious injuries and continue to suffer serious deprivations of basic human needs such as: Protection from staff and inmate physical and sexual assaults.

2. Plaintiff asserts that statewide conditions poses a substantial risk of serious harm to plaintiff, as well as other inmates health and safety now and in the future.

3. Plaintiff asserts that the defendants knew of the obvious and long standing condition of overcrowding and understaffing, and the deprivations of basic human needs from newspaper and magazine articles; Inmate grievances; Prior Lawsuits; Letters and incident reports, which talked about and alerted the defendants to these unconstitutional and unsafe conditions within the (WDOC). However, the defendants failed to take reasonable measures in response to the substantial risk they posed, causing plaintiff, as well as other inmate serious physical, emotional, and psychological pain and suffering, humiliation, fright and injuries from being victims subjected to these conditions.

4. Plaintiff asserts that even though the defendants were aware of the substantial risk of serious harm to the plaintiff and the inmate population, when the harms/injuries did in fact occur, the defendants were deliberate indifferent to the plaintiff and inmates injuries, by conspiring to cover-up such incidents/claims, by failing to investigate or adequately investigate the claims, and condoning and/or turning a blind eye, and allowing staff and inmate perpetrators to go unpunished and the inmate-victim to suffer in pain, fear, humiliation, fright, physically, emotionally, and psychologically.

5. Plaintiff asserts that there have been numerous sexual assaults that have occured within the Fox Lake Corr. Inst. (FLCI), from being overcrowded and understaffed. Correctional Staff and inmates have committed sexual assaults on other unsuspecting inmates, some which have gone unpunished because the defendants permitted, tolerated, condone and/or turned a blind eye to the patterns of sexual assaults by staff and inmates within (FLCI), when brought to their attention.

6. Plaintiff asserts that the defendants have knowingly and intentionally conspired to cover-up, and conceal such incidents of sexual assaults, fraternization, and illegal activities by staff and inmates by not securing evidence, not adequately investigating or prolonging investigations to allow witnesses, or staff and inmate perpetrators to

either retire, transfer, or be released, with a foreseeable result being that staff and inmates believed that their conduct would be tolerated due to the the overcrowding and understaffing and were thus, encouraged to believe that they could continue to violate the law and rights of inmates with impunity.

7. Plaintiff asserts that the defendants knew of the longstanding and obvious conditions of overcrowding and understaffing and the deprivation of basic human needs they posed to inmates from newspaper & magazine articles, inmate prison grievances, inmates lawsuits, criminal court cases, letters, e-mails and prison incident reports, which alerted the defendants to these unsafe conditions within the WDOC prisons, such as FLCI, CCI, WCI, GBCI, DCI, RCI, etc.,.

8. Plaintiff asserts as an example of the numerous sexual assaults that have taken place:

- a) In 2014, a correctional officer (Thomas J. Lukas) was fired for sexually harassing inmates and pulling another inmates pasts down. Lukas had worked at Fox Lake Corr. Inst., for 16-years, and it's not likely it started all of a sudden. Lukas was not charged with sexual assault until 2016.

- b) In May 2016, officer (Alex A. Wouts) was fired for sexually assaulting three inmates, and had been sexually assaulting inmates for about 10-years. Many went unreported and those that were reported was covered-up by staff. Officer (Wouts) was Hiv positive at the time of the sexual assaults and knew of his HIV status since July 2010, while working at Fox Lake Corr. Inst. (FLCI).

- c) In Sept. 2016, prison nurse (Jennifer Stehling) was fired for sexually assaulting an inmate at (FLCI), and bringing contraband into the prison.

9. Plaintiff asserts that prior to the above sexual assault incidents, there had been 8 inmate sexual assaults and 17 staff sexual misconduct/assaults, within a 5-year period at the (FLCI) but not charged.

10. Plaintiff asserts that although the defendants knew of the serious conditions at FLCI and other WDOC prisons, and the substantial risk they pose, the defendants failure to take reasonable measures in response to those known risk to protect Plaintiff and other inmates, caused plaintiff, as well as other inmates serious physical, emotional and psychological pain and suffering, humiliation, fright, and injury from having to protect themselves and take matters into their own hands, subjecting themselves to more prison time and punishment, or just accept being assaulted and a victim of staff and inmates.

11. Plaintiff asserts that as a result of the unsafe conditions at (FLCI) and the defendant's failure to take reasonable measure in response to those known risk, plaintiff became a victim of sexual assault by staff and inmates while confined at (FLCI).

12. Plaintiff asserts that on March 11, 2016, he was transferred to Fox Lake Corr. Inst., (FLCI), and sat in receiving unit-9 awaiting a housing unit assignment. About six weeks later plaintiff was told to pack up and was sent to unit-5. Plaintiff unpacked all his property. About five hours later, plaintiff was told to pack up his property again as he was being moved to unit-2.

13. Plaintiff inquired as to why he was being moved. The Sgt. did not know what was going on and called a Captain, and attempted to stop the move, as plaintiff had just moved over to the unit and unpacked all his property. Plaintiff heard another Sgt., state to the Sgt., who was trying to stop the move: "he made his own bed, now he has to lay in it". This statement was stated twice by the other Sgt..

14. Plaintiff asserts that at the time he was pursuing a lawsuit against staff there at FLCI because plaintiff was being prevented from pursuing his legal actions prior to his transfer, by FLCI staff and librarian. However, plaintiff did not know if this was the reason, and did not know what was going on or why these statements were made by the Sgt., but assumed that the Sgt. was talking about someone else, because plaintiff had just come to (FLCI) and did not know any of the staff there, except one who was later seen from a prior prison.. plaintiff was moved to unit-2 is a empty 2-man room.

15. Plaintiff asserts that later, an inmate Antonio Thornton (hereafter, AT), was moved into the room. Plaintiff did not know the inmate and had no reason to suspect anything. (AT) had been in the room for about 2-months.

16. Plaintiff asserts that one day after working, plaintiff prepared his food to eat and placed it on his room table and went to take a shower. Plaintiff came back into the room and ate his food, and about 40 minutes to an hour, started feeling drowsy and sleepy and fell asleep. At about 4:00 am, plaintiff awoke out of a 5-hour dead sleep and felt wet and greasy on his bottom. Plaintiff thought it was strange but paid it no mind thinking it was him sweating from being asleep.

17. On Sept. 11, 2016, Plaintiff asserts that this happen again awaking out of a 4-5 hour dead sleep the same way. However, when sleep plaintiff could see people over and around him but could not awake or get up

when he tried, and when plaintiff did finally awake noone was around and plaintiff had a dry cotton mouth, and again plaintiff awoke to the same condition. Plaintiff again thought this was strange because he had never ever awoke like this before in his 22-years of being confined within numerous wisconsin prisons, but felt something was not right, but was not sure what was going on because he was sleep, and again brushed it off.

18. Plaintiff assert that the next day, he would catch inmate conversations stating things such as: " he be knocked out, you can do whatever you want"; "he cant feel nothing"; "he don't remember nothing". Plaintiff pushed these statements out of his mind because he felt that nobody would be that stupid, and that he would surely awake if he felt somebody touch him. Still in denial, trying to explain away, justify and convince himself that what he thought was not happening, was not. But could not explain away the past events and what he heard.

19. Plaintiff asserts that he felt that something was going on and started marking these events and conversations down on the calendar and taking notes, wondering if he should say something to staff to check the cameras, but felt confused, scared and embarrassed to talk to somebody about what was going on.  this was plaintiff first incarceration and did not know how to handle this situation if this was taking place without jeopardizing his freedom.

20. On Oct 5, 2016, plaintiff after work prepared his food, showered and put on new never worn underwear. After eating plaintiff became sleepy and fell asleep. During sleep plaintiff could hear and see vision of people around him but could not awake. At around 4-5 am plaintiff again awoke out of a dead sleep, was wet and this time sore at his rear, and when to the bathroom and looked and seen grease stains on his underwear. Plaintiff took them off and put them in the drawer. The next morning inmates kept asking plaintiff was he alright, which made plaintiff suspicious that something had happen, and for the entire day plaintiff would stare and observe (A.T.) to see if he could invoke a tell-tale sign. While (AT) was at another inmates door (AT) stated: "I think he know" I think he know".

21. Plaintiff asserts that after these events, he could no longer push to the side, and decided to tell officer Sgt. Ellis, whom plaintiff knew from a prior prison, what was going on, plaintiff asked Sgt. Ellis if he could talk to him privately and explained all that had happened and what he heard.  Sgt. Ellis stated he would call Capt. Schueler (hereafter, Defendant Schueler), to come down, and left him an email also.

22. Plaintiff asserts that the next day at 2:00pm defendant Schueler came down to the unit and plaintiff informed him of all that had happened

and what he heard, and showed him the underwear, which he had plaintiff place in a paper bag and seal it. Plaintiff moved out the room to the other end of the unit. Defendant Schueler turned the case over to a PREA-investigator (Bruce Siedschlag, hereafter, Mr. Siedschlag), who was to interview plaintiff. Plaintiff was called and informed Mr. Siedschlag of all that happened and provided the dates (Oct. 5-7, 2016) and the names of all inmates who were making certain statements, and a witness who heard the inmates conversations. Mr. Sieslagge stated he would interview these inmates.

23. Plaintiff asserts that not one inmate name or witness given was called or talked to since Oct. 7, 2016 the day plaintiff reported the incident to ~~~~~ Schueler, and Siedschlag.

24. On Nov. 7, 2016, after not being called back by Mr. Siedschlag in over a month, plaintiff wrote a letter to Dodge County Sheriff requesting an investigation and charges be filed because the prison was not trying to do anything about the assault. About 3-4 days later a Det. Stiemsma came to the prison regarding the letter, and stated he would need a statement of what happened, and a DNA swab, and that if he did not return, give the statement to the Captain to fax to him. He stated he could not conduct any investigation until the prison finished their investigation.

25. On Jan 7, 2017, plaintiff wrote attorney (Matt O'Neill), who he knew from a prior case, and asked for help because the prion investigator was not doing anything and trying to cover-up the matter. Mr/O'Neill set up an atty call in which plaintiff informed him of what had happened, and stated that he would forward any letters to the proper authorities.

26. On Jan. 10, 2017, plaintiff wrote a letter to Warden Hepp and Security Director Schomisch about the sexual harassment and humiliation by inmates from FLCI failure to investigate or prosecute the inmates involved. However, nothing was done.

27. Plaintiff asserts that realizing what had happened and the fact that nothing was being done about it, the severe emotional stress, humiliation and mental trauma, made plaintiff start seeing clinical services as plaintiff felt helpless and did not know what to do, because if plaintiff took matters into his own hands, he feared he would never get out of prison, because any retaliation or attempt by plaintiff to defend himself would be used by the parole board against the plaintiff to deny parole, to keep him confined in prison.

28. Plaintiff asserts that by doing nothing, these persons involved would get away with what they done, and others would try to assault plaintiff

because he did nothing. This caused plaintiff severe mental distress, and depression, from being humiliated by inmates, to the level that plaintiff withdrew from talking to people, and family, because he couldn't trust staff or deal with anyone, which stills lingers to this day. Plaintiff attempted to deal with this himself in silence to keep from being humiliated and targeted and possibly seriously injuring someone should it be attempted again.

29. Plaintiff asserts that this assault caused severe mental and psychological distress, anxiety and depression as a result of the sexual assault by staff, and the stress wondering if plaintiff is HIV positive, as plaintiff is likely to be beyond the window period in which HIV test might not be accurate, due to the long wait and the covering up by the defendants.

30. On Jan 27, 2017, plaintiff sent a request to file charges to the office of District Attorney; and the Office of Crime Victim Services, explaining what had occured and that the prison was failing to investigate. However, nothing was done.

31. On Feb. 10, 2017, after 9:40 count when officers were supposed to be watching inmates, an inmate who is a BD, or BG gang member with the inmates on the unit-2, came down to plaintiff room and forced his way into plaintiff room, when plaintiff attempted to close the door, and physically assaulted plaintiff, punching him in the face. Plaintiff attempted to defend himself punching and kicking the inmate attacker. This attack went on for about 10-15 minutes with no officers watching, or inmates helping plaintiff. An hour later, plaintiff and the inmate was taken to lock-up, and plaintiff was punished for defending himself when an inmate entered his room to attack him.

32. Plaintiff asserts on information and belief, in correlation with paragraph 31, that correctional officers at FLCI sanctioned the attack/assault on plaintiff by inmates. No officers were there to supervise the inmates, which resulted in plaintiff being attacked by the gang member, resulting in physical as well as other injuries to plaintiff face, head and back.

33. On Feb. 12, 2017, plaintiff wrote Warden Hepp a letter regarding the lack of security and safe environment at Fox Lake Corr. Inst., (FLCI). However, nothing was done.

34. On Feb. 16, 2017, Plaintiff wrote Warden Hepp a request slip telling him that the prison was not safe for inmates, and that he (plaintiff) was attacked and that there was no help and no officer around or no call buttons for help in the rooms. However, nothing was done.

35. On Feb. 19, 2017, plaintiff wrote PREA investigator (Siedschlag) a request about not being told what was going on about the investigation and felt that it was being covered up. Siedschlag continued to lead plaintiff astray, stating that he was investigating the matter, that he would talk to inmates, that he knew how to get answers out of inmates, and that he was not pushing the matter under the rug. However, these lies, and false hopes of justice continued to be asserted to plaintiff to keep plaintiff quiet.

36. On March 9, 2017, plaintiff filed a notice of Claim and injury, with the office of Attorney General, for the assaults that happened at FLCI.

37. Plaintiff asserts that after release from segregation from being attacked by the inmate, plaintiff was told by other inmates that the gang members wanted to get plaintiff moved off the unit-2, because plaintiff had told police and had the gang member (AT) moved off unit-2, to Unit-3, so they had one of their members attack Plaintiff so plaintiff could go to segregation and the officer could move the gang member (AT) back to Unit-2. Which the officers did.

38. On July 8, 2017, after learning this information, plaintiff wrote the Security Director (Schomisch) about the matter and what plaintiff was told, and informing him of the mental and emotional suffering that he was going through because nothing was being done.

39. Plaintiff asserts that as a result of the sexual assault, Det. Stiemsma came to see plaintiff and took a DNA-sample for testing of the evidence regarding the assault.

40. Plaintiff asserts that all prisoners who have been convicted and sentenced to the Wisconsin State Prison system, have their DNA taken/collected to be stored in the Wisconsin DNA database. The only persons who DNA is not placed in the database is: Correctional officers and WDOC Staff employees.

41. Plaintiff asserts that he tried to figure out why this was happening to plaintiff as he had been confined for 23 years and this had never happened to him, and could only conclude that this had happened because of his civil suit against staff at FLCI.

42. Plaintiff asserts that after hearing inmates conversations about assaults at FLCI, plaintiff investigated into FLCI and found a high frequency of sexual assaults at (FLCI), and that this was an ongoing pattern at FLCI, which should have put the Warden Hepp and Security Director Schomisch on notice that there was a strong likelihood that other inmates could be sexually and physically assaulted at FLCI if no security is provided.

43. Plaintiff asserts that even with notice, neither the Warden Hepp or Security Director Schomisch did nothing to protect the inmates at FLCI from staff and inmates assaults, turning a blind-eye, to the patterns of assaults to the point, where staff and inmates were free to continue their reign of terror and assaults on unsuspecting inmates such as plaintiff.

44. Plaintiff asserts that as a result of the prior sexual assaults, due to the understaffing and lack of security at (FLCI), the defendants were deliberate indifferent to plaintiff, as well as other inmates safety, in failing to take reasonable measures to protect inmates or provide inmates a means to summon help, which caused severe mental, psychological, pain and suffering, emotional distress, humiliation, anguish, feelings of helplessness, and hopelessness, nightmares, lack of sleep, and inability to trust staff to protect him.

45. Plaintiff asserts that PREA investigator (Siedschlag) continued to lead plaintiff astray, never contacting the police or provided them with the results of his investigation, stating that he was investigating the matter, that he would talk to inmates. However, these lies continued to be told to plaintiff, to keep plaintiff quiet, to stall the investigation and cover up the violations, until plaintiff was transferred to another prison.

46. On July 17, 2017, plaintiff was transferred to Jackson Correctional Institution (JCI), where some of the inmates who names were given to PREA investigator (Siedschlag), that were believed to be involved in the assault at (FLCI), were sent too, and was heard telling other inmates at JCI of the assault, which continued to subject plaintiff to humiliation, and severe emotional distress, fear, and inability to trust roommates. This was reported to staff at JCI, but staff told plaintiff that he been through trauma and that, that was affecting his judgment, and referred plaintiff to see clinical services for treatment.

47. Plaintiff asserts that three of these inmates where gang members, who were at (FLCI) on the same unit-2 at the time of the assaults to plaintiff, in which he heard them telling other inmates about the assaults on plaintiff while asleep, making plaintiff not able to sleep or trust any of his cellmates for fear that the matter may happen again and force plaintiff to seriously hurt or possibly kill someone if they tried to assault plaintiff, which would destroy plaintiff chances of future release from prison.

48. Plaintiff asserts that he elected to have (white) roommates instead of black roomates, because most of the black inmates where GD and BD gang members and friends with each other, and plaintiff would not trust them as a cellmate.

49. Plaintiff asserts that although he tried to put the matter out of his mind, he could not, and had to meet with (JCI) clinical services and was given an assault packet to read to try to help deal with the matter.

50. Plaintiff asserts that after still not hearing or receiving any information regarding the sexual assault at FLCI, plaintiff had (JCI) unit manager Speckhart, email the PREA investigator (Sieslagge), regarding the matter to see why nothing was being done.

51. On Dec. 10, 2017, plaintiff sent an open records request to (JCI) records Dept., to try to see what was going on with the PREA investigation, and received no response.

52. On Jan. 29, 2018, plaintiff wrote a letter to (JCI) warden regarding not receiving a response to the open records request.

53. On Jan. 30, 2018, plaintiff received a response to his open records request, which contain the decision, and documents regarding the FLCI PREA investigation.

54. Plaintiff asserts a document was submitted that showed that DNA evidence was recovered from the evidence provided to the detective by plaintiff, of an unidentified person that was not in the (CODIS) DNA database.

55. Plaintiff asserts that there is no way staff of officers DNA would be on plaintiff underwear unless they were involved in the sexual assault of plaintiff.

56. Plaintiff asserts that at no time did any staff handle the underwear of plaintiff, as it was placed in a bag by plaintiff and sealed by Capt. Schueler, and then turned over to (Siedschlag), who then turned it over to the detective for DNA testing.

57. Plaintiff asserts that by DNA being recovered on his underwear, there is a strong likelihood and belief that correctional staff with the help of inmates were involved in the sexual assault of plaintiff while he was drugged and asleep.

58. Plaintiff asserts on information and belief that PREA investigator conspired to prolonged the investigation, as an attempt to cover up the matter or hope that plaintiff would let the matter go or just forget about the assault once transferred to a new prison. This would explain why none of the first names of inmates, given by plaintiff, where talked to; why it was prolonged to allow these inmates involved or witnesses to get released from prison; and to cover-up the matter due to past assaults on inmates.

59. Plaintiff asserts that upon review of the documents of the PREA investigation, statement given by plaintiff to the investigator Siedschlag where written inaccurate, dates given regarding the assaults (Oct. 5-7), so the cameras could be checked where not listed, only the 7th, facts intentionally left out and manipulated to appear that the names given by plaintiff of inmates were not involved, and thus, were never talked to and was either released from prison or transferred out of FLCI.

60. Plaintiff asserts as a result of the assaults, and due to lack of security at FLCI, plaintiff suffered injury to his April 18, 2018 parole hearing at JCI, because the assault was used against plaintiff to deny custody reduction and transfer to a minimum prison camp, as plaintiff was not allowed to explain the reasons why the assault should not be considered, but plaintiff was prevented due to the alleged confidentiality of the PREA matter. So, plaintiff suffered punishment and injury as a result of the attack.

61. Plaintiff asserts as a result of the understaffing and lack of security at FLCI, plaintiff as well as other similarly situated inmates have suffered severe mental and emotional distress, physical and psychological pain and suffering, humiliation, anguish, feelings of helplessness, nightmares, lack of sleep, fear, and lack of ability to trust staff, inmates, or anybody.

62. Plaintiff asserts that the results of the DNA test gives an inference that staff and inmates were involved in the sexual assault of plaintiff, and would explain why plaintiff seen people standing around him, but could not awake when he tried.

63. Plaintiff asserts that there is no way staff could enter plaintiff room, to assault plaintiff without the knowledge and assistance of the roommate (A.T.) and that said acts and assistance where intentional and undertaken under the color of law. see, *Snider v. Dylag*, 188 F.3d 51 (2d Cir.1999).

64. Plaintiff asserts that there is no way inmates could assault plaintiff unless correctional staff were involved with the assistance of inmates, and that said acts and assistance where intentional and undertaken under the color of law. *id.*

65. Plaintiff asserts that correctional staff have engaged in bringing illegal drugs, cell phones, porn, and other items into FLCI prison, and on information and belief, these drugs were used to facilitate an assault on plaintiff.

66. Plaintiff asserts that because staff and officers DNA are not collected and stored in a separate DNA-databank, for investigation of crimes committed against inmates while working as a state employee, the staff and inmates involved has escaped justice and eluded the law, due to the lack of a DNA databank for state workers, Staff cover up, and lack of investigation, denying justice to the victims such as plaintiff.

## CAUSE OF ACTION

**COUNT I**  (8th and 14th Amendment violation)

The plaintiff hereby incorporate all allegations in paragraphs 1-66, as if fully set forth verbatim below insofar as they are not inconsistent therewith and state:

3. Defendant John Doe, did knowingly and intentionally, while acting under color of law as a correctional officer, at the Fox Lake Corr. Inst., violated plaintiff 8th and 14th amendment right to the United States Constitution, to be free from cruel and unusual punishment, and was deliberate indifferent to plaintiff rights, when (John Doe) Sexually Assaulted plaintiff, leaving his DNA, while plaintiff was drugged unconscious asleep and unaware of what was happening.

4. Defendants, Hepp, and Schomisch, did knowingly and intentionally, while acting under color of law, violate plaintiff 8th and 14th amendment right to the United States Constitution, to be free from cruel and unusual punishment, and was deliberate indifferent to plaintiff safety, when plaintiff room was entered and he was physically attacked by a gang member for reporting the assault, while confined at Fox Lake Corr. Inst. (FLCI).

5. Defendants Hepp, and Schomisch, did knowingly and intentionally, while acting under color of law, violate plaintiff 8th and 14th amendment right to the United States Constitution, to be free from cruel and unusual punishment, and was deliberate indifferent to plaintiff safety, when defendants failed to take reasonable measures to protect in response to known risks of physical and sexual assaults from inmates and staff, while confined at FLCI.

6. Defendants Hepp, Schomisch and Siedschlag, violated plaintiff 8th and 14th amendment right to the United States Constitution, to be free from cruel and unusual punishment, and was deliberate indifferent to plaintiff rights, when defendants sought to cover-up the assaults on plaintiff by not thoroughly and adequately investigating them, allowing witnesses, and defendant-perpetrators to retire, transfer, and/or get release from prison, as a means to cover up the assaults allowing the perpetrators to escape justice.

**COUNT II** (State Law Tort)

The plaintiff hereby incorporate all allegations in paragraphs 1-66, as if fully set forth verbatim below insofar as they are not inconsistent therewith and state:

7. Defendant John Doe, did knowingly and intentionally, while acting under color of law as a correctional officer, at the Fox Lake Corr. Inst., drugged and Sexually Assaulted plaintiff, leaving his DNA, while plaintiff was unconscious asleep and unaware of what was happening, in violation of Wis. Stats, 893.53, 893.54, 893.57, and 893.82. State Tort Law.

8. The defendants Hepp, Schomisch, were knowingly and intentionally negligent in their duties, when they failed to exercise reasonable or ordinary care to protect the plaintiff and other inmates, and prevent foreseeable harm, from prior known risks of physical and sexual assaults from staff and inmates while confined at FLCI, in violation of Wis. Stats, 893.53, 893.54, 893.57, and 893.82. State Tort Law.

9. The defendants Hepp, Schomisch, Siedschlag, was knowingly and intentionally negligent in their duties to exercise reasonable or ordinary care to protect the plaintiff, when defendants sought to cover-up the assault on plaintiff by not thoroughly and adequately investigating them, allowing witnesses, and defendant-perpetrators to retire, transfer, and/or get release from prison, as a means to cover up the assaults and allow the perpetrators to escape justice. violating Wis. Stats, 893.53, 893.54, 893.57, and 893.82. State Tort Law.

## VII.   **REQUESTED RELIEF:**

Wherefore, the plaintiff pray that the court Grant the following relief:

A.   Issue a declaratory judgment stating that:

10. That the defendants while acting under color of law, violated plaintiff 8th and 14th amendment right to the United States Constitution, to be free from cruel and unusual punishment, and was deliberate indifferent to plaintiff safety, when (John Doe) Sexually Assaulted plaintiff leaving his DNA, while confined in Fox Lake Corr. Inst.

11. That the defendants while acting under color of law, violated plaintiff 8th and 14th amendment right to the United States Constitution, to be free from cruel and unusual punishment, and was deliberate indifferent to plaintiff safety, when plaintiff was physically attacked by a gang member for reporting the assault, while confined at Fox Lake Corr. Inst. (FLCI).

12. That the defendants while acting under color of law, violated plaintiff 8th and 14th amendment right to the United States Constitution, to be free from cruel and unusual punishment, and was deliberate indifferent to plaintiff safety, when

    defendants failed to take reasonable measures to protect in response to known risks of physical and sexual assaults from inmates and staff, while confined at FLCI.

B.   Issue an injunction ordering the defendants to:

13. That all current WDOC State correctional officers and Employees DNA be taken and stored in a database, to be tested "only" when a sexual assault is reported, and removed from the state database when retired, or no longer working in the WDOC.

14. That an Ombudsman be appointed to investigate inmate claims of sexual assaults independent of the WDOC, or prison PREA investigators.

15. That this case matter also be referred to the U.S. Attorney office to have evidence presented to the grand jury for indictment of the defendants for criminal civil rights violations under 18 U.S.C. § 241 and 242, as the court has the ability to refer matter to U.S. Attorney for investigation. See *U.S. Ex. rel. Savage v. Arnold*, 403 F.Supp. 172 (E.D. PA 1975)(Court can sua sponte refer private citizen complaint to U.S. Attorney).

16. That the Conduct report #2956748 that resulted from the physical attack for reporting the sexual assault, be removed from the plaintiff prison files/records

C.   Award plaintiff the following:

17. General/Compensatory damages against the defendants jointly and severally for the sexual assault of plaintiff in violation of plaintiff 8th and 14th amendment to the U.S. Constitution.

18. General/Compensatory damages against the defendants jointly and severally for the physical assault of plaintiff in violation of plaintiff 8th and 14th amendment to the U.S. Constitution.

19. General/Compensatory damages against the defendants jointly and severally for the mental and emotional pain and suffering, embarrassment, humiliation, fear and depression as a result of the physical and sexual assault by staff and inmates in violation of plaintiff 8th and 14th amendment to the U.S. Constitution.

20. General/Compensatory damages against the defendants jointly and severally for the mental and psychological distress, anxiety and depression as a result of the sexual assault by staff, and wondering if plaintiff is HIV positive, as plaintiff is likely beyond the window period in which HIV test might not be accurate, due to the covering up by the defendants, in violation of plaintiff 8th and 14th amendment to the U.S. Constitution.

21. Award plaintiff Punitive damages and exemplary damages to punish the defendants for the sexual assault of plaintiff and the acting with intent, wanton, reckless and callous indifference to plaintiff rights by covering up the violations and allow the perpetrator(s) to go free, without punishment depriving plaintiff of his 8th and 14th amendment to due process of law and Justice.

22. Award plaintiff cost and fees of bringing this suit, reasonable attorney fees pursuant to 42 U.S.C. § 1988 and any other relief the court deems proper.

**JURY TRIAL DEMAND**

Plaintiff respectfully request a Jury trial for this case.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

Dated this 27th day of July 2020.

Respectfully Submitted

*Patrick, S Tate*

Patrick, S Tate #291459

OCI / uniT-9

BOX 983

Oregon 53575