IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PATRICK S. TATE,

                              Plaintiff,

    v.                                                                 OPINION and ORDER

JOHN DOE (CORR OFFICER), KEVIN CARR,
RANDALL HEPP, MARK SCHOMISCH,                        20-cv-704-jdp
CAPT. SCHUELER, BRUCE SIEDSCHLAG,
and JOHN DOES 2–5,

                              Defendants.

---

    Plaintiff Patrick S. Tate, appearing pro se, is a prisoner at Oakhill Correctional Institution, in Oregon, Wisconsin. Tate alleges that when he was incarcerated at Fox Lake Correctional Institution, he was drugged and sexually assaulted by a correctional officer several times and he was later physically assaulted by another inmate. He seeks leave to proceed in forma pauperis with his case, and he has made an initial partial payment of the filing fee as previously directed by the court.

    Tate has filed a proposed amended complaint, Dkt. 9, which I will consider as the operative pleading in the case. The next step is for me to screen Tate's complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In doing so, I must accept his allegations as true, *see Bonte v. U.S Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010), and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will allow Tate to proceed on Eighth

Amendment claims against the officer who assaulted him and other prison officials who failed to protect him from the assaults by staff and another inmate.

## ALLEGATIONS OF FACT

Plaintiff Patrick S. Tate, is a prisoner at Oakhill Correctional Institution. His allegations largely concern events that occurred while he was incarcerated at Fox Lake Correctional Institution (Fox Lake).

Several times in September and October 2016, Tate woke up from "dead sleep," meaning a deeper sleep than he would usually have, feeling "wet and greasy" and sore around his buttocks. Dkt. 9, at 7. Once, Tate partially woke and saw people "over and around" him, but he couldn't move. *Id.* He overheard conversations in which other inmates said "he [is] knocked out, you can do whatever you want," "he can't feel nothing," and "he don't remember nothing." *Id.* at 8.

On the night of October 5, 2016, Tate put on brand-new underwear before bed. That night, Tate "could hear and see vision[s] of people around him but could not awake." *Id.* When Tate woke up, his buttocks were wet and sore and there were grease stains on his underwear. That morning, other inmates repeatedly asked him if he was all right, which made Tate even more suspicious. Tate overheard his cellmate tell another inmate, "I think he know[s]." *Id.* Tate asked Sergeant Ellis (who is not a defendant) to meet with him. Ellis said that he would contact defendant Captain Schueler, who moved Tate of out the cell, moved Tate's cellmate to another unit, and directed defendant Prison Rape Elimination Act investigator Bruce Siedschlag to investigate. Siedschlag asked Tate for the names of inmates whom Tate had overheard taking about him or were otherwise witnesses to events. But Siedschlag did not speak with any of

those inmates. Siedschlag's investigation materials had incorrect dates for the assaults, so investigators were unable to recover camera footage for the correct days. Siedschlag also left out the names of at least some of the inmates that Tate believed were involved.

In November 2016, Tate wrote to the county sheriff about the assaults and a deputy interviewed him and took a DNA swab from the underwear that Tate had saved. The DNA result did not match anyone in the state's database, which Tate believes means that it could not have been an inmate who assaulted him and instead must have been a prison staff member. Tate wrote to defendants Warden Randall Hepp and Security Director Mark Schomisch about the assaults but they did nothing to increase security. I take Tate to be saying that no one was punished by the DOC for the assaults.

On February 10, 2017, Tate was attacked by an inmate who was a member of the same gang as Tate's former cellmate. The inmate punched Tate in the face and they then fought for 10 to 15 minutes. The correctional officers working on the unit, unidentified "John Doe" officers No. 2–5, did not intervene to help Tate.

In the five years prior to these events, there had been at least eight incidents at Fox Lake in which an inmate was sexually assaulted by another inmate and 17 incidents at Fox Lake in which an inmate was the victim of sexual assault or sexual misconduct by a staff member. Tate says that the Department of Corrections continued to understaff prions while overpopulating them while failing to discipline inmates or staff who assault others.

Tate continued to be harassed by gang members even after being moved to a new prison (Jackson Correctional Institution) that suffers from the same problems at Fox Lake.

ANALYSIS

Tate contends that an unidentified correctional officer drugged and sexually assaulted him multiple times, and that prison officials failed to intervene when gang member inmates assaulted Tate in response to him reporting the assaults and having his cellmate moved out of the unit. He also says that prison supervisors failed to investigate the sexual assaults and turned a blind eye toward prisoner assaults by inmates and staff alike. Tate contends that these actions violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. But he doesn't articulate a Fourteenth Amendment theory and courts generally consider claims about prisoners being assaulted to be Eighth Amendment claims. So I'll analyze Tate's allegations only under the Eighth Amendment.

The Eighth Amendment prohibits prison officials from consciously disregarding a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001)). To maintain an Eighth Amendment failure-to-protect claim, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm," and that the defendant consciously disregarded that risk. *Farmer*, 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

4

Tate alleges that an unidentified "John Doe No. 1" correctional officer drugged and assaulted him several times. Tate states an Eighth Amendment claim against Doe No. 1 for directly harming him.

Tate alleges that defendant Captain Schueler was notified of the assaults and Schueler moved Tate of out the cell and turned the case over to defendant Prison Rape Elimination Act investigator Siedschlag. Tate does not state an Eighth Amendment claim against Schueler because Schueler took reasonable actions to remove Tate from danger and start an investigation; his allegations do not raise a reasonable inference that Schueler consciously disregarded the threat of harm. Tate also alleges that Siedschlag did not interview any of the inmate witnesses that he told Tate he would, and that Siedschlag incorrectly restated the dates of the alleged assaults, resulting in camera footage not being retained. I will allow Tate to proceed on an Eighth Amendment claim against Siedschlag for intentionally performing a deficient investigation.

Then, after Tate spoke with police and his cellmate was moved to another unit, another inmate who belonged to the same gang as the cellmate attacked Tate for about 10 to 15 minutes, with no help arriving from defendant John Doe correctional officers Nos. 2–5, who were on duty in his unit. I'll grant Tate leave to proceed against Does Nos. 2–5 for failing to protect Tate from the attack or at least intervene once it started. At the preliminary pretrial conference that will be held later in this case, Magistrate Judge Stephen Crocker will explain the process for Tate to use discovery requests to identify the names of the Doe defendants and to amend the complaint to include the proper identity of those defendants.

For both the sexual assaults by Doe No. 1 and the physical assault by an inmate, Tate alleges that prison supervisory staff was aware of the danger facing inmates. In particular, he

5

says that there was a series of sexual assaults by prison staff in the years leading up to the events of this case but that the Department of Corrections continued to understaff and overpopulate prisons and fail to discipline offenders, leading to an increased risk of danger. Tate also says that he wrote to defendants Schomisch and Hepp about this problem and they did nothing. Supervisors can be liable under the Eighth Amendment for a problem faced by prisoners by "facilitat[ing] it, approv[ing] it, condon[ing] it, or turn[ing] a blind eye for fear of what they might see." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Because Tate alleges that Schomisch and Hepp turned a blind eye to the risk of assault by both staff and inmates, I will grant him leave to proceed on Eighth Amendment claims against those defendants,

Tate also alleges that he continued to be harassed by gang members even after being moved to a new prison that suffers from the same problems at Fox Lake, and he seeks leave to proceed on a claim for injunctive relief against defendant DOC Secretary Carr in his official capacity, saying that the conditions of confinement statewide are unsafe. To bring an official-capacity claim, plaintiff must show that a policy or custom of the government entity played a part in the alleged constitutional deprivation. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007).

Tate hasn't alleged enough to state a claim that a DOC policy or custom is currently placing him in danger. Tate details a history of staff sexual assaults at Fox Lake and harassment he faced from gang members at Fox Lake and Jackson Correctional Institution, but Tate isn't incarcerated at either of those facilities now—he's currently at Oakhill Correctional Institution. He states that DOC prisons are generally overpopulated and understaffed, but those are vague allegations that are insufficient to show that those policies create a substantial risk of harm

6

from assault that could support an Eighth Amendment claim. *See Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005) (vague allegations of a generalized risk of harm are not enough to state a claim). I'll deny Tate leave to proceed on an official-capacity claim.

ORDER

IT IS ORDERED that:

1. Plaintiff Patrick S. Tate's proposed amended complaint, Dkt. 9, is the operative pleading.

   - Plaintiff is GRANTED leave to proceed on individual-capacity Eighth Amendment claims against defendants Bruce Siedschlag, Randall Hepp, Mark Schomisch, and John Doe correctional officers Nos. 1–5.

2. Defendants Captain Schueler and Kevin Carr are DISMISSED from the case.

3. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on defendants. Plaintiff should not attempt to serve defendants on his own at this time. Under the agreement, the Department of Justice will have 60 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's complaint if it accepts service for defendants.

4. For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorney.

5. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

6. If plaintiff is transferred or released while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered January 22, 2021.

                                        BY THE COURT:

                                        /s/

                                        _____

                                        JAMES D. PETERSON
                                        District Judge