IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PATRICK S. TATE,

                    Plaintiff,

     v.

                                                              ORDER

JOHN DOE (CORR OFFICER),
BRUCE SIEDSCHLAG, RANDALL HEPP,                               20-cv-704-jdp
MARK SCHOMISCH, EUGENE DEVRIES,
CARL WIERSMA, and JOHN SZWEDA,

                    Defendants.

---

Plaintiff Patrick S. Tate, a former inmate in the Wisconsin prison system, alleges that he was drugged and sexually assaulted by an unidentified "John Doe" correctional officer multiple times and that he was later physically assaulted by another inmate after he complained about the sexual assaults. Because Tate was unconscious during the assaults, he can't identify the John Doe defendant himself. Through recruited counsel, Tate sought an order under Federal Rule of Civil Procedure 35 directing DNA samples to be taken from two officers who he believes are the only possible suspects given their work schedules, to then be compared with a partial DNA profile developed from DNA recovered from the underwear that Tate was wearing during one of the assaults. Magistrate Judge Anita Marie Boor denied that motion, ruling that Rule 35 didn't apply to medical testing of the non-party officers, and that even if Rule 35 had applied, Tate failed to show good cause for those tests. Tate objects to that ruling. For the reasons stated below, I will overrule Tate's objections.

BACKGROUND

Tate is a former inmate at Fox Lake Correctional Institution. Tate alleges that on at least three occasions in 2016, he woke up feeling as if he had been drugged, and feeling wet, greasy, and sore around his buttocks. Then, after he complained about the assaults and got his cellmate moved out of the unit, he was physically assaulted by another inmate who belonged to the same gang as his former cellmate.

After screening Tate's first amended complaint I granted him leave to proceed on Eighth Amendment claims against five John Doe defendants—one was a correctional officer who Tate says sexually assaulted him and the other four were correctional officers who failed to protect him from the later assault by an inmate. Dkt. 11. I also granted him leave to proceed on Eighth Amendment claims against supervisory staff who failed to protect him from assaults by both staff and inmates. *Id.*

Tate then amended his complaint further, naming John Does Nos. 2–4, amending his theory of relief against two of them, dropping John Doe No. 5 from the case and adding as proposed defendants 37 officers who worked on third shift. Dkt. 28. Tate moved under Rule 35 to take DNA samples from the 35 male officers of the 37 he named, in an attempt to match the DNA sample taken from Tate's underwear after one of the assaults. Rule 35(a)(1) states:

> The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

A motion for examination "may be made only on motion for good cause." Rule 35(a)(2)(A).

I denied Tate's motion without prejudice, stating, "I'd likely allow Tate to obtain a DNA sample if he were seeking the sample from a particular person that he could identify as

2

the defendant perpetrator" but that Tate hadn't actually identified the perpetrator, and I was unaware of any authority allowing him to use Rule 35 to obtain DNA evidence from multiple people to ascertain the identity of a Doe defendant. Dkt. 34, at 3. I did not allow him to add these various staff members as defendants, instead keeping John Doe No. 1 in the caption. *Id.* Because his claim directly about the sexual assaults was at an impasse because of the complex logistical difficulties in identifying the John Doe defendant, I stayed the case to recruit counsel for the limited purpose of identifying the John Doe defendant. *Id.* at 4.

Recruited counsel conducted additional discovery and renewed Tate's Rule 35 motion. Dkt. 46. This time, Tate sought DNA testing of only two individuals: Sergeants Ronald Waas and Scott Schulz. Tate argued that these were the only two people who could have perpetrated the assaults because examination of the third-shift prison staff schedules for September 11 and 12 and October 5 and 6, 2016 (the approximate dates of two of the assaults), revealed that they were the only two male officers who worked during both of those times.

Magistrate Judge Boor denied Tate's renewed motion. Dkt. 59. In doing so she recounted Tate's allegations, the procedural history of the case, the procedures used to analyze DNA samples, and the history of Rule 35. She noted that Rule 35's "party" language has historically been construed narrowly given the privacy concerns at stake. She distinguished Tate's request from other cases in which testing was ordered from individuals whose claims for relief hinged on a DNA match; in those cases, the persons for whom testing was sought were already parties in the case. Dkt. 59, at 12–13 (*see e.g., Beach v. Beach*, 114 F.2d 479 (D.C. Cir. 1940) (affirming ordering of blood tests for minor wife suing by next friend and wife's child, who were "parties in substance" in maintenance action focusing on paternity); *Howell v. Hillcorp Energy Co.*, No. CIV.A. 12-0293, 2013 WL 1455758 (E.D. La. Apr. 9, 2013) (testing ordered

3

for child in wrongful death action brought on her behalf, with child's standing hinging on paternity). She concluded that Rule 35 does not give the court authority to compel DNA tests from Waas and Schulz because they weren't "parties to this lawsuit either in name or substance." *Id.* at 14.

Magistrate Judge Boor also concluded that even had Rule 35 applied to Waas and Schulz, she would deny Tate's motion for lacking good cause because there wasn't a reasonable possibility that testing would be likely to return a match to the partial profile from Tate's underwear. *Id.* at 15–20 (adapting good-cause test from *McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55, 61–62 (E.D.N.Y. 2002)). Tate's proposal to test Waas and Schulz was based on him identifying the date of one assault as either September 11 or 12, 2016, and another as either October 5 and 6, 2016, and the officer schedules for those dates returning only those two officers as working during both periods. Magistrate Judge Boor stated that "the selection of these dates is tenuous at best" given Tate's inconsistent recollections, and she concluded that "the court does not have much confidence that the dates of the alleged assaults have been identified with any degree of certainty." *Id.* at 19.

ANALYSIS

Tate makes two objections, arguing that Magistrate Judge Boor erred in (1) concluding that Rule 35 does not authorize this court to order DNA testing from the two officers who Tate suspects are the John Doe defendant; and (2) concluding that there was not a reasonable possibility of getting a DNA match from one of the two officers because of discrepancies in Tate's accounts of when the two assaults occurred.

4

A magistrate judge's ruling on a non-dispositive issue will be modified or set aside only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). This standard is deferential and will be met only when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006) (citation omitted).[1]

## A.  Scope of Rule 35

In arguing that Magistrate Judge Boor was incorrect about the scope of Rule 35, Tate states that "the John Doe 1 defendant has been joined to the case and is a party, providing the Court with jurisdiction to order discovery relevant to identifying that defendant up to and including DNA evidence" and says that he means to incorporate his previous briefing with his objection. Dkt. 61, at 1–2. Tate is correct that the John Doe defendant is a party to this case. But I agree with Magistrate Judge Boor that Sergeants Waas and Schulz are not parties to this case, and that there is no authority allowing Rule 35 medical examinations of persons suspected to be the identity of a John Doe defendant.

Otherwise, in his brief-in-chief Tate doesn't meaningfully grapple with Magistrate Judge Boor's discussion of how Rule 35 has been applied in other marginal cases. Stating that his previous briefing is incorporated doesn't explain what Tate believes that Magistrate Judge Boor got wrong. Rather than point out a mistake in her reasoning, Tate refers back to my ruling denying his first, pro se motion for DNA testing of 35 prison staffers, in which I stated:

> Based on [cases cited by Tate], I'd likely allow Tate to obtain a DNA sample if he were seeking the sample from a particular person that he could identify as the defendant perpetrator . . . . But Tate has not actually identified the perpetrator. He has stated

---

[1] As Tate points out, defendants incorrectly cite Rule 72(b) for part of its discussion of the standard of review, but that doesn't materially affect the analysis.

a claim against John Doe No. 1; he has not stated claims against each of the 35 people that might be Doe No. 1. Tate cites no authority (and my own research reveals none) allowing a plaintiff to use Rule 35 to obtain DNA evidence from multiple people to ascertain the identity of a Doe defendant.

Dkt. 34, at 3.

Tate's interpretation of that passage is this: "Judge Peterson indicated that if Mr. Tate were able to narrow down his list of 35 officers to a single officer, he would likely grant the motion for DNA testing. With the aid of representation, Mr. Tate was able to narrow the list down to 2 officers. Although this is not the single officer Judge Peterson referenced, it is hardly a fishing expedition." Dkt. 61, at 1–2.

This misconstrues my previous ruling. My point wasn't that 35 potential John Does are too many to justify Rule 35 examinations (although that does seem like an obvious problem; more on that below); it was that Tate's previously cited case law supports Rule 35 examinations of an actual named defendant in certain circumstances. The fact remains that Tate did not identify that defendant, so that case law doesn't support Rule 35 testing of the non-party officers here.

Tate's reply brief contains a more detailed analysis of this issue. This comes dangerously close to waiver, but because Tate was arguably responding to defendants' arguments supporting Magistrate Judge Boor's ruling, I'll consider his reply arguments. Tate argues that the two officers were indeed named as parties because they were included in the caption of his second amended complaint, Dkt. 28, which I accepted as the operative pleading, Dkt. 34, at 4. But in screening that complaint, I explicitly rejected the inclusion of the 35 staffers as defendants, concluding that "[f]or now, the alleged perpetrator will remain Doe No. 1." *Id.* at 3.

6

Given the court's reasoning that Sergeants Waas and Schulz aren't parties, Tate asks for permission to amend his complaint to name Waas and Schulz as defendants. But that request runs into the same problem that I discussed in denying his attempt to add 37 third-shift officers: Tate doesn't state a plausible claim for relief against Waas or Schulz; he only speculates that either one of them harmed him. He can't name them as defendants.

Also in reply, Tate argues that Magistrate Judge Boor incorrectly interpreted *Beach*, a case in which a minor sued her husband for maintenance, claiming that they had had a child together. Because the wife was a minor, the lawsuit was brought by a next friend. Nonetheless, the district court ordered blood testing of the wife and the child under Rule 35 to prove paternity, stating that the wife was "of course a party" and that the child was also a "party in substance," citing the concept that "parties not before the court will not be bound by the decree" unless that person "is so far represented by others that his interest receives actual and efficient protection." *Beach*, 114 F.2d at 481–82 (internal quotations omitted).

Tate argued that Sergeants Waas and Schulz are "parties in substance" under *Beach*. Magistrate Judge Boor distinguished *Beach* from the present case, stating as follows:

> By analogizing to this case, plaintiff is putting the cart before the horse. In *Beach*, the appellant and her child were substantially involved in the case *prior* to the Rule 35 blood draw. It was their connection to the litigation that justified the court's order. Here, the opposite is true. Waas and Shulz's involvement is speculative and *depends* on the results of a Rule 35 examination. At this point, before the DNA test, neither has any sufficient connection to the case to be considered a party in substance.

Dkt. 59, at 12 (emphases in original).

Tate argues that this reasoning incorrectly narrows the scope of what the *Beach* court's definition of a "party in substance"; Tate states that the opinion "lists a variety of circumstances where an unnamed party may be considered a party in substance under the law," citing footnote

16 of that decision. Dkt. 67, at 4. But the examples given in that footnote support Magistrate Judge Boor's point; all involve non-party persons who were substantially involved in the cases.[2] Unlike those examples, Tate merely speculates that Waas and Schulz are involved in this case at all. And in any event, Magistrate Judge Boor's discussion of *Beach* was only one portion of her overall analysis of the relevant case law concluding that Rule 35 does not apply to a person suspected to be a John Doe defendant. I agree with that decision and will overrule Tate's objection.

## B. Good cause

My ruling on the scope of Rule 35 is enough to doom Tate's request for examinations. Tate also objects to Magistrate Judge Boor's ruling that that there wasn't good cause to perform the DNA testing even if Rule 35 did apply to the two officers because there wasn't a reasonable possibility of getting a DNA match from one of the two officers.

Magistrate Judge Boor applied the following test for good cause, taken from *McGrath*, 209 F.R.D., at 61–62: (1) the DNA evidence is relevant; (2) providing a sample will not unduly infringe the party's privacy rights; and (3) a reasonable possibility that the testing will yield a match. Magistrate Judge Boor added a fourth element: that Tate must make a "'showing of need' for the DNA testing." Dkt. 59, at 15 (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Tate argues that the "reasonable possibility" element is not always included in Rule 35 decisions and should thus be excised from the test, but even if it is included, the facts meet

---

[2] The examples include (1) the United States, in a suit brought against a nominal defendant in an attempt to evade sovereign immunity; (2) private persons, in a suit brought by the United States to cancel patents on their behalf; (3) a child to be adopted, in contested adoption proceedings; and (4) a party's lawyer, in proceedings concerning whether to disqualify a judge for improper bias. *Beach v. Beach*, 114 F.2d 479, 482 n.16 (D.C. Cir. 1940).

that element here because Sergeants Waas and Schulz are the only two prison staffers who worked at the prison on the dates that Tate identified two of the assaults taking place.

Particularly given the lack of controlling case law on Rule 35 examinations, Magistrate Judge Boor did not err in considering the possibility of a match when making the good-cause determination. Whether considered as a separate element in the test or "simply a re-packaging of the question of relevance" as Tate put it in his brief supporting his motion before Magistrate Judge Boor, Dkt. 47, at 12, it makes sense to consider the likelihood of a match to avoid parties using Rule 35 as a tool for "fishing expeditions," *McGrath*, 209 F.R.D. at 61. This case is a good example of why such a consideration is necessary. If I had allowed Tate to amend his complaint to name all 37 third-shift staffers as defendants, would it have been appropriate to mandate buccal swabs for all of them? Nothing in the relevant case law suggests that Tate would have good cause for that wide a sweep of DNA evidence, even given his dearth of other options to identify the John Doe defendant.

Which leads to the question whether Tate had good cause to seek DNA evidence from *only* Sergeants Waas and Schulz. Magistrate Judge Boor said there wasn't because Tate didn't adequately confirm the specific dates that counsel used to cross-check the staff schedules:

> [T]he court needs to look at the information plaintiff has gathered, and there isn't much there. Plaintiff identified Officers Schulz and Waas because they were the officers who worked at the prison on September 11 or 12 and October 5—dates plaintiff now asserts correspond to the alleged assaults. Dkt. 47 at 9. But the selection of these dates is tenuous at best. Plaintiff identified the date of the first assault as "on or about" September 11, Dkt. 28 at 9, unable to recall whether it was the morning of the 11th or 12th. Adding to the uncertainty, plaintiff reportedly marked the incident on the calendar after the fact. *Id.* at 10. And plaintiff has alternatively identified the date of the second assault as October 5, the morning of October 6, and "Thursday night October 6th," Dkt. 48-3 at 4. The court understands the difficulty plaintiff has faced in piecing together the facts and sympathizes

> with plaintiff's plight, but that does not change the limited record. As it stands, the court does not have much confidence that the dates of the alleged assaults have been identified with any degree of certainty.

Dkt. 59, at 19.

Tate argues that Magistrate Judge Boor erred in this analysis because Sergeants Waas and Schulz were the only staffers who worked third shift during both the September 11 and 12 and October 5 and 6, 2016 windows of time that Tate says two assaults took place. He adds that "there is no indication that the assaults occurred outside of the range of dates identified." Dkt. 61, at 2. But that's incorrect. As Magistrate Judge Boor's discussion of this issue suggests, Tate's own uncertainty about the date of the assaults calls into question whether the assaults fell within those narrow windows. For instance, given that Tate didn't contemporaneously record the date of the September 2016 assault, how does he remember that the first assault didn't occur on September 10 or 13 instead? He doesn't say. And once Tate is unable to lock down the dates of the assaults, there's much less reason to think that Waas and Schulz are the correct suspects. Which leads back to the question whether Tate has good cause to obtain testing from a much larger number of staffers; he wouldn't. I conclude that Tate fails to show that Magistrate Judge Boor's analysis was clearly erroneous or contrary to law. So I will overrule this objection.

CONCLUSION

Given my ruling, it appears that Tate will be unable to name the John Doe defendant. Tate calls this a "catch-22." Dkt. 67, at 5. While Tate's frustration is understandable, particularly given the heinous nature of his allegations, the bottom line is that litigants are usually unable to maintain a lawsuit against a party they cannot identify. The usual solution

for this problem in prisoner cases is to allow the plaintiff to use discovery methods to obtain the identity of an unknown prison staffer. That effort has failed here, both because of the unfortunate unavailability of video footage and because of the limitations of Rule 35.

I recruited counsel for the limited purpose of identifying the Doe John defendant. With that effort seemingly finished, I'll give counsel a deadline to withdraw or otherwise respond regarding their representation in this case. Once the court receives that response, I'll direct the clerk of court to set a conference with Magistrate Judge Boor to set a schedule for resolving the remaining claims.

ORDER

IT IS ORDERED that:

1. Plaintiff's objections to Magistrate Judge Boor's order on his Rule 35 motion, Dkt. 61, are OVERRULED.

2. Plaintiff's counsel may have until April 10, 2026, to respond regarding their limited representation of plaintiff in this case.

Entered March 20, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge